654 So.2d 868 (1995)
STATE of Louisiana
v.
Herman J. MATTHEWS.
No. 94-KA-2112.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1995.
*869 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellant, Herman J. Matthews.
Harry F. Connick, Dist. Atty. and Susan M. Erlanger, Asst. Dist. Atty., Parish of Orleans, New Orleans, for appellee, State of La.
Before BARRY, CIACCIO and MURRAY, JJ.
MURRAY, Judge.
Herman Matthews was charged by bill of information on June 9, 1994, with possession of cocaine, a violation of LSA-R.S. 40:967(C). After trial on July 11, 1994, a six-member jury found him guilty as charged. He was sentenced on July 18, 1994, to serve thirty-six months at hard labor as a second offender under R.S. 15:529.1. He now appeals, arguing that the trial court erred in (1) denying his motion to suppress the evidence and (2) allowing testimony regarding other crimes into evidence over his objection.
At trial NOPD Detective Duane Carkum testified that on May 14, 1994, about 8:35 p.m., he was driving an unmarked police car on Claiborne Avenue at Governor Nicholls Street when he was flagged by a woman who offered him a prostitution date. When he told her he wanted "something to smoke," she got into his car and directed him to the 1500 block of North Derbigny Street. Once there the woman called out "Herm" to a man standing nearby; "Herm" then walked to Carkum's side of the car and sold him a white rock-like substance for $20. The woman asked Carkum to drive her to the 1500 block of North Roman Street, and as he was driving, he asked her the name of the man who sold the rock and was told it was "Herman." After letting the woman out of the car, Carkum radioed a description of her and of Herman to his backup team. As he drove back around the block, Carkum noted that the man who sold him the drugs was not on the street but that his backup team was talking to several men standing at 1534 North Derbigny Street where he had encountered Herman. The defendant was not among the men. NOPD Sergeant Robert Bardy testified that as part of Detective Carkum's backup team on May 14, 1994, he responded to the radio call Carkum made. When he stopped his car in the 1500 block of North Derbigny Street, the people there began to disperse. Sergeant Bardy saw the defendant, who was sitting on a stoop at 1534 North Derbigny Street, stand up, place a clear glass tube on the step, and crush it. Bardy arrested him for possession of drug paraphernalia. The pieces of the tube were retrieved and a burned residue was found in *870 the bottom of one piece. When the defendant was searched, a white rock was found in his pocket. (The defendant, who had been sitting on the stoop, moved to step into the house behind him when the police approached. He was apprehended in the doorway of the house.) As defendant was arrested, Paul Newman, who lived at 1534 North Derbigny, complained that he told "those crack heads not to run into my house." When Sergeant Bardy stepped into the house, he found marijuana and cocaine on the premises. The residue found in the pipe and the rock taken from the defendant were tested and proved to be cocaine.
Jerrie Lee Newman, who was at her brother's house at 1534 North Derbigny Street on May 14, 1994, testified that she has been the defendant's girlfriend for thirteen years. On the night in question, Ms. Newman was seated in the living room when the police pushed the defendant to the front door of the house. She saw the policeman search him, and she stated that she did not see any drug retrieved from his pocket.
A review of the record for errors patent reveals none.
In his first assignment the defendant argues that the trial court erred in denying the motion to suppress the evidence.[1] He maintains that the seizure was illegal because the officers did not have reasonable suspicion for the investigatory stop and detention nor probable cause to arrest him.
The Louisiana Code of Criminal Procedure Article 215.1 provides that a law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. If an officer stops a person pursuant to art. 215.1, he may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986), writ denied, 488 So.2d 197 (La.1986).
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court delineated the point at which a suspect's rights have been infringed upon. Hodari D. considered the question of when an individual is "seized" within the meaning of the Fourth Amendment. The Court held that until the individual either submits to the police show of authority or is physically contacted by the police, he is not seized. The Louisiana Constitution, however, affords a higher standard of individual liberty than the Fourth Amendment of the United States Constitution because Article 1, Section 5 of the Louisiana Constitution protects citizens against an "invasion of privacy." State v. Church, 538 So.2d 993, 996 (La.1989). The Louisiana Supreme Court has held that an individual is "seized" within the meaning of Article 1, Section 5 of the Louisiana Constitution when he is either "actually stopped" or when an actual stop is "imminent." State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In State v. Tucker, 626 So.2d 707 (La. 1993), opinion adhered to on rehearing, 626 So.2d 720 (1993), the Louisiana Supreme Court adopted the Hodari D. definition of "actual stop," holding that an actual stop of a person occurs only when he submits to a show of police authority or is physically contacted by the police. Id., 626 at 712. The Court also explained the factors to be considered in determining whether an "actual stop" is "imminent." The Court declared:
It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual *871 stop' of the individual is `imminent.' Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an `actual stop' of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. (Footnotes omitted; emphasis in original).
Id., 626 at 712-713.
Furthermore, when property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference then such property may be lawfully seized. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981). In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983).
In the case at bar when the defenant dropped the glass tube and stepped on it, he had not been "actually stopped" nor was an "actual stop imminent." If we credit the officer's testimony, as the jury apparently did, the defendant dropped the glass pipe or tube before the officer had intruded on his privacy interests. The defendant stood up when he saw the officer's car stop, and then he discarded the pipe containing a residue of cocaine; the officer stopped him, picked up the glass, and arrested him. Because the property was abandoned prior to the stop of the defendant, it was legally seized and therefore properly admitted into evidence.
The defense argues that this case is similar to State v. Slan, 93-2590 (La. 3/3/94), 632 So.2d 749 (La.1994), where evidence seized from a bystander to a drug deal was deemed to be inadmissible. In Slan the bystander to a drug transaction was arrested with the dealer even though there was no evidence he was involved with the sale. When the police searched the bystander, they found the marked $20 bill that had just been paid to the dealer. However, this defendantunlike the bystander in Slanacted so as to incriminate himself and to alert the officer to his involvement in the consumption of drugs: the defendant dropped a glass pipe when he saw the officers' car pull up. The defendant was then stopped for possession of drug paraphernalia.
There is no merit in this assignment of error.
Defendant's next claimthat the officers had no probable cause to search his person and seize contrabandis equally without merit.
The search of a defendant is legal if there is probable cause for his arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993) writ denied 627 So.2d 660 (La.1993). Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime. State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writs denied 531 So.2d 764 (La.1988). The circumstances upon which the arresting officers act must show that criminal activity is more probable than non-criminal activity. Equivocal conduct does not afford probable cause for arrest where the possibility of criminal conduct is no greater than the possibility of innocent behavior. State v. Buckley, 426 So.2d 103 (La. 1983).
In Minnesota v. Dickerson, ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), a cocaine possession case, the U.S. Supreme Court recognized a limited "plain feel" exception to the search warrant requirement, holding that police may seize non-threatening contraband detected by touch during a protective *872 pat-down search so long as the search remains within the bounds marked by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court stated:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search ... Under the [plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. (citations omitted) If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e. if "its incriminating character [is not] immediately apparent," (citations omitted) the plain view doctrine cannot justify its seizure.
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment or at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Id. at pp. ___, ___, 113 S.Ct. at pp. 2136, 2137.
Applying the Dickson rationale to the instant case, the seizure of contraband from defendant was valid.
Officer Bardy saw the defendant at the spot where a drug transaction had just occurred. When the defendant observed the officer stop, he immediately dropped a glass pipe and stepped on it. Then he moved to enter a house. At that point, the officer had a legal right to stop defendant and frisk him for weapons. Officer Bardy testified that while patting down the defendant incidental to his arrest for possession of drug paraphernalia, a rock of cocaine was found in his right trouser pocket. The stop and frisk of defendant and seizure of the cocaine from his pocket was within the bounds enunciated in Terry and Dickerson.
The defendant next argues that the trial court erred in allowing testimony regarding other crimes not related to the defendant into evidence over the defense objection. The defendant asserts that his conviction should be reversed because admission of the testimony concerning the fact that cocaine and marijuana were found in the apartment at 1534 North Derbigny Street violates the standards for admission of other crimes evidence established in State v. Prieur, 277 So.2d 126 (La.1973). Additionally, he argues that the Prieur doctrine requires that the prosecution advise him of its intention to introduce such evidence.
Prieur restricts the admissibility of other crimes committed by the defendant and requires the State to give pre-trial notice of any evidence of such other crimes which it intends to present at the trial on the merits. The doctrine has no application to crimes committed by third parties. State v. Johnson, 529 So.2d 142 (La.App. 4th Cir.1988), writ denied 535 So.2d 740 (La.1989). Since the State made no attempt to prove that the defendant had possession of the drugs found in the house, the Prieur restrictions do not apply. Hence, this assignment of error has no merit.
For the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] Although the original motion to suppress the evidence made on June 28, 1994, was withdrawn, the trial court allowed the defense attorney to reurge the motion immediately prior to trial.