675 So.2d 1233 (1996)
STATE of Louisiana
v.
Mark BURNS aka Raul Burns.
No. 95-KA-1500.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1996.
*1234 Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney, New Orleans, for Plaintiff.
Frank G. Desalvo, New Orleans, for Defendant.
Before BARRY, KLEES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The appellant, Mark Burns aka Raul Burns, and his co-defendant Gregory Williams were charged on June 6, 1991 with possession of 400 or more grams of cocaine. A motion to suppress evidence was heard on October 18, 1991. On April 14, 1992 the court granted the motion in part and denied it in part. The state filed a motion to reopen *1235 the hearing, which was granted. Additional evidence was heard on November 19, 1992, after which the court reiterated its prior ruling. The state then applied for writs to this court. On April 13, 1993, at 92-K-2766, this court reversed the trial court's rulings of April 14, 1992 and November 19, 1992, which suppressed evidence, and remanded the matter for trial on the merits.
Trial was had on September 27 and September 29, 1994. The appellant was tried before a jury and found guilty as charged. On November 7, 1994 appellant admitted the allegations in the multiple bill and was sentenced to serve fifteen years at hard labor, without benefit of parole, probation or suspension of sentence, under the multiple bill statute, and ordered to pay a $250,000.00 fine, which order was suspended.[1] On appeal, appellant raises three assignments of error. We affirm.
The record reflects that on May 3, 1991, N.O.P.D. Det. Williams received information from a "reliable" but untested C.I. that Raul Burns, the appellant, was conducting wholesale and retail sales of cocaine from his sister's residence at 13265 Curran Boulevard. The C.I. indicated that Burns sold from the residence while his sister was at work. The C.I. also noted that the appellant's "principal lieutenant" was his brother, Ryan Burns. According to Det. Williams's affidavit, the C.I. had seen the drugs in the residence on occasions in the recent past.
Ryan Burns was known to Det. Williams from prior drug arrests in 1988 and 1989 involving large amounts of drugs, as well as drug arrests by other officers. In addition, Det. Williams also received information from another reliable source that Ryan Burns was supplied by his brother Raul, who maintained a storage/packaging facility in Eastern New Orleans.
Det. Williams and other officers established a surveillance of 13265 Curran Boulevard on May 4th. Sometime in mid-afternoon Det. Williams saw the appellant and another man leave the house. The appellant handed the other man a small bag which the man placed in his pocket. The man got into a tow truck, emblazoned on the side with the words "Doing Bad", and left the scene. The appellant locked the door of the residence and drove away in a white Oldsmobile.
On May 8th, the officers reestablished the surveillance of the residence. The tow truck was parked in front of the residence, and a Buick registered to Paul Burns was parked in the driveway. While the officers watched, a brown car pulled up to the residence. The driver parked the car, walked to the residence, knocked on the door, and was admitted. After a few minutes, the driver, the appellant, and the tow truck driver, identified as Gregory Williams, all left the residence. The driver of the car placed something in his pants pocket, got into his car, and drove away. The appellant and Gregory Williams then walked to the tow truck. The appellant opened the door, reached inside, and retrieved a dark colored bag which he gave to Williams. Williams went back inside the residence, while the appellant got into the tow truck and drove away.
Based upon the information from both informants and the officers' observations on May 4th and again on May 8th, the officers concluded on May 8th that the appellant was making a delivery when he left the house, and they decided to stop him. The officers stopped the appellant a short distance from the residence and advised him of his rights in connection with their investigation of drug sales. The appellant then told the officers he had just left his sister's house on Roger Drive. Because the officers knew he was lying, Det. Williams told him they were going to get a search warrant for the Curran Blvd. residence. The appellant then told the officers his sister did not know about the drug sales from her house. He further told them that he had a small amount of cocaine in the house, approximately four ounces, which was on the kitchen counter. He explained that he had just purchased it to get money to help his mother meet some delinquent house *1236 notes. He also told the officers that the tow truck owner was in the house.
Det. Williams testified that the appellant then told him that any delay in his return to the residence would cause the tow truck driver, Mr. Williams, to become alarmed. Fearing that a delay would cause Gregory Williams to destroy any contraband in the house, the officers took the appellant back to the house to secure it. As they arrived, Gregory Williams was leaving the house. The officers detained him and advised him of his rights, and then they walked both men back inside to wait until Det. Williams could secure a search warrant. Det. Williams admitted that the appellant told them that no one else was in the house, but they did not believe him because he had lied to them earlier. Once inside, they saw items lying in plain view in the kitchen, but these items were not mentioned in the search warrant affidavit.
On the kitchen counter the officers saw a clear plastic bag of cocaine powder and four boxes of baking soda, one of which was opened and partially empty. In the sink was a large beaker with a large rock-like substance of crack cocaine cooling in the water.
After the house had been secured, Det. Williams left to get the search warrant. During his absence, the appellant's sister arrived and consented to a search of the house at about the time the warrant was signed. The officers searched the house and found a Crown Royal bag in the kitchen containing approximately $900.00. Using a narcotics detection dog, the officers went upstairs and found an article of clothing in the sister's closet to which the dog alerted the officers. They found $2,200.00 inside that piece of clothing. The appellant admitted that he had hidden that money. He then directed an officer to a storage area under the stairs where the officer found a triple beam scale and two more clear plastic bags of powdered cocaine. The officers also found a .22 caliber revolver in an upstairs bedroom.
Det. Williams testified that Burns was advised of his rights prior to his statements upon being told that the officers would seek a search warrant for the Curran address and again before he was placed under arrest prior to the search of the house. Fingerprints found on the beaker in the kitchen sink were found to match those of Gregory Williams. In all, the officers seized three bags of powder cocaine weighing 779.6 grams, and a rock of crack cocaine weighing 92.3 grams.
A review of the record reveals that there are no errors patent.

ASSIGNMENT ONE
In this assignment the appellant argues that this court was in error in reversing the trial court's granting of the defendant's motion to suppress on the grounds of a legal theory which was not urged by the state and for which no evidence or testimony was adduced. The trial court held that the evidence found in plain view when the officers went in to secure the house should be suppressed, but not the evidence found as a result of the search warrant.
This court overturned that ruling in a considered writ on April 13, 1993 at 92-K-2766. This court there found that there was probable cause to support the issuing of the search warrant and that the affidavit for the warrant did not include any information which the officers gleaned from their entry into the house. The court thus concluded that there was an independent basis for the seizure of the evidence from the house that was not "tainted" by the officers' entry into the house, even if such entry was illegal. The court further concluded that, because of this independent basis, the evidence seized from the house was admissible at trial. See United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
The appellant argues that this court may not base its conclusion on a legal theory not raised by the state. The appellant cites no law to support this argument. This court found sufficient evidence and testimony to support its own finding, whether or not the applicable theory was raised by the state in its application.
A previous writ decision on the admissibility of evidence is not binding on a panel considering the case on appeal. State v. Moran, 584 So.2d 318 (La.App. 4th Cir. *1237 1991). However, the court hearing the appeal will give great deference to its pretrial decision, unless it is apparent, from the trial record, that the determination was patently erroneous and resulted in manifest injustice. State v. Moran, supra.
Reviewing the trial court record, we cannot say that the pretrial writ decision by this court on the admissibility of evidence was patently erroneous or resulted in manifest injustice.
Accordingly, this assignment is without merit.

ASSIGNMENTS TWO AND THREE
In the second assignment the appellant argues that there was no reasonable cause to stop, nor probable cause to arrest, defendant; hence, any information or evidence derived from the officer's unlawful conduct was tainted, and thereby tainted the subsequent search made under warrant and with the homeowner's consent. In the third assignment the appellant argues that this court erred in admitting the evidence under the independent source doctrine, as the warrant affidavit clearly failed to establish probable cause and included information garnered as a result of the unlawful stop and arrest of defendant; hence, there was no independent lawful source for the evidence discovered by police either during the first or subsequent search, and that evidence should have been suppressed.
Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den., 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton, 441 So.2d 1195 (La.1983), cert. den., 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Andrishok, 434 So.2d 389 (La.1983). The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. Belton, supra; U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
La.C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." A person's liberty and privacy are not violated simply because a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Lanter, 391 So.2d 1152 (La.1980); State v. Duplessis, 391 So.2d 1116 (La.1980). When an individual is actually stopped without reasonable cause or if a stop is imminent, the "right to be left alone" is violated, resulting in an illegal seizure. Belton, supra.
In the instant case, Det. Williams received information on May 3, 1991 from an untested C.I. that the appellant was distributing narcotics from his sister's house at a particular address. The C.I. further told Det. Williams information that the appellant's brother was a key man in the operation. This fact was corroborated by a reliable informant, who advised that Ryan Williams was supplied with drugs by his brother, the appellant. In addition, the officer was familiar with the drug arrests of appellant's brother. Finally, the day after being informed, Det. Williams observed the appellant hand a bag to a man in a tow truck, co-defendant Gregory Williams, outside the subject house. On May 8, 1991, Det. Williams and other officers observed an apparent transaction, then the appellant removed a bag from the tow truck, which he gave to Gregory Williams and left in the tow truck. Det. Williams had at least a reasonable suspicion to believe that the appellant was about to make a delivery.
*1238 According to Det. Williams's affidavit and testimony, the appellant was advised that he was under investigation and advised of his Miranda rights when he was stopped. He then lied about where he was coming from, furthering the suspicion against him. When told that the officers were going to apply for a search warrant, the appellant then volunteered that there was cocaine in the house, in order to shield his sister from criminal liability.
Considering the circumstances of this case, the officers had reasonable cause for the stop. The appellant's statements were then voluntarily rendered and did not taint the evidence which was ultimately seized. In addition, this court held in the writ that the issuing magistrate had probable cause to issue the warrant.
These assignments have no merit.
For the foregoing reasons, appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Williams was tried before the court and found guilty of possession of cocaine. The trial court granted the defense motion to quash the multiple bill. Williams was then sentenced to three years at hard labor, suspended, placed on two years of active probation, and ordered to pay $450.00 to the judicial expense fund and $50.00 to the indigent transcript fund.