728 So.2d 405 (1998)
STATE of Louisiana
v.
Edward B. BENTLEY.
No. 97-KA-1552.
Court of Appeal of Louisiana, Fourth Circuit.
October 21, 1998.
Writ Denied May 7, 1999.
*406 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney, New Orleans, for Plaintiff/Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN and Judge CHARLES R. JONES and Judge MIRIAM G. WALTZER.
JONES, Judge.
Edward Bentley appeals his conviction and sentence for possession of crack cocaine with the intent to distribute. On January 18, 1996, the jury convicted Bentley, and he was sentenced as a multiple offender to serve twenty years at hard labor without benefit of probation, parole, or suspension of sentence. Having reviewed the record, we affirm Bentley's conviction, vacate his sentence and remand for resentencing.

PROCEDURAL HISTORY
Defendant, Edward Bentley, was charged on July 22, 1994, with possession with intent to distribute cocaine (crack), a violation of La.R.S. 40:967(A)(1). After denying the defendant's motion to suppress the evidence, the trial court sentenced Bentley to two and one-half years for five counts of direct contempt of court committed during the hearing. On January 31, 1996, defendant filed motions for post-judgment verdict of acquittal and for new trial. The trial court denied both motions. The trial court then sentenced Bentley to twenty years at hard labor.
*407 On April 4, 1996, the State filed a bill of information charging him as a habitual offender. After reviewing the evidence, the trial court found Bentley to be a third-felony habitual offender, vacated the original sentence, and resentenced him to serve twenty years at hard labor in the custody of the Department of Corrections, without benefit of probation, parole, or suspension of sentence. The trial court subsequently denied defense counsel's oral motion to reconsider sentence.

FACTS
New Orleans Police Officer Clifton Neeley testified that on July 2, 1994, he and his partner, Officer Willie Jones, were patrolling the intersection of Forstall and North Johnson Streets when they observed Bentley standing with another subject, who was in a seated position. Officer Neeley became suspicious of the two men because he characterized the area as "probably one of the highest drug areas in the lower 9th ward." Officer Neeley stated that when Bentley saw the officers, he walked away very quickly, and later walked back and stood next to the second subject.
Officer Neeley further testified that, as the officers approached the two men, he could see Bentley "repositioning something white in his mouth." He testified that as he and his partner drew closer to Bentley, he could see "each little piece was wrapped in plastic." Because Bentley had so much of the object in his mouth, Officer Neeley asked Bentley what he had in his mouth. When Bentley tried to respond, the officer could clearly see the cocaine in Bentley's mouth. Bentley refused to spit the cocaine out of his mouth, but instead began to chew it. Considering the amount of cocaine Bentley had in his mouth, Officer Neeley then advised Bentley to spit out the cocaine otherwise he could kill himself.
When Bentley refused to remove the cocaine from his mouth, Officer Neeley placed Bentley in the rear of the police car "in case he went into convulsions or something like that." While Officer Neeley and his partner were talking, Officer Neeley noticed Bentley was bent over in the back of the police car. Officer Neeley then walked back to the vehicle and saw the defendant spit the object out of his mouth. At that point Officer Neeley removed Bentley from the police unit and handcuffed him. However, before, placing the subject back in the police unit, Officer Neeley retrieved the object, which he believed to be cocaine, from the floorboard and advised him of his rights. Officer Neeley also recovered four twenty-dollar bills and a one-dollar-bill from the defendant's person. Officer Neeley testified that prior to the start of his shift, the police cruiser was checked for any discarded objects that may have been left by the shift before him. There were no objects found.
Officer Willie corroborated the testimony of Officer Neeley. The defense stipulated to the New Orleans Police Department criminalist's report which identified the thirty-four pieces of rock-like substance as cocaine.
No other witnesses testified at trial for the State or the defense.

ERRORS PATENT[1]
A review of the record reveals two errors patent.
The record reflects that Bentley filed post-trial motions styled "Motions for Judgment Notwithstanding the Verdict and Motion For A New Trial." The trial court denied both motions on January 31, 1996, and on the same day, the trial court sentenced defendant. Bentley also filed a motion to reconsider sentence, which was also denied. La.C.Cr.P. art. 873 requires a twenty-four hour delay between the denial of a motion for new trial and sentencing, unless the defendant waives such delay. This court has held that, where a defendant shows no prejudice and does not challenge his sentence on appeal, any error in failing to observe the twenty-four hour delay is considered harmless. State v. Ward, 94-0490, pp. 7-8 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, 566, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165; State v. McKinney, 93-1425, pp. 8-9 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, 1125, writ denied, *408 97-1339 (La.12/19/97), 706 So.2d 444. Defendant has failed to show any prejudice because his original sentence was vacated and set aside on April 4, 1996, when the defendant was adjudicated a habitual offender and sentenced under La.R.S. 15:529.1. Accordingly, defendant is not entitled to any relief as a result of this error. La.C.Cr.P. art. 921.
The trial court sentenced Bentley as a habitual offender without benefit of probation, parole or suspension of sentence. (La.R.S. 15:529.1 in effect at the time of the instant offense, which applies regardless of when defendant was sentenced, did not provide that the sentence was to be served without benefit of parole, only without benefit of probation or suspension of sentence.)

ASSIGNMENT OF ERROR # 2
In his second assignment of error, Bentley argues the State failed to prove that defendant was a third felony habitual offender because the State failed to prove that he was sentenced on one of the predicate convictions. Thus, he argues that his conviction on that offense was not final. We agree.
In July 1988, Bentley was arrested for distribution of marijuana and possession with intent to distribute cocaine. On September 7, 1988, he pled guilty to possession of cocaine and received a five-year sentence and five years active probation. On December 30, 1988, Bentley was again arrested for possession with the intent to distribute twenty-five rocks of cocaine and carrying a concealed handgun.
On March 17, 1989, Bentley pled guilty to possession of a firearm by a convicted felon, but he was not sentenced. Apparently, the State did not prosecute him on the possession of twenty-five rocks of crack cocaine with the intent to distribute. Further, there was no indication the State charged him as a second felony offender following his conviction in September of 1988 for possession of cocaine. On April 13, 1989, Bentley's probation was revoked and his concurrent six-month and five-year sentences he received in September of 1988 were made executory.
At the habitual offender hearing on April 4, 1996, the State presented a copy of the bill of information charging the defendant on February 3, 1989 with possession of a firearm on December 30, 1988, following a felony conviction. A copy of a guilty plea that showed that Bentley pled guilty on March 17, 1989 to possession of a firearm by a convicted felon was also presented. The minute entry and the docket master for March 17, 1989, revealed that the guilty plea was entered, and that the arrest register was placed into evidence.
New Orleans Police Officer Keith Arnold identified the right and left thumb fingerprints on the arrest register taken in court prior to testimony as Bentley's. Both the March 17, 1989 minute entry and the docket master revealed that sentencing was set for April 6, 1989. However, the docket master contains no further entries beyond March 17, 1989. In fact, the minute entry is marked "end of Docket Master" after the March 17, 1989 entry. There was no other minute entry presented by the State.
Though Bentley conceded that it was his handwriting on the guilty plea, he could not recall ever signing this form. Further, he denied being sentenced on the charge, and from the documents submitted in the record, it appears Bentley was never sentenced on this conviction.
Defense counsel objected to the habitual offender adjudication on the ground that the conviction being used as a predicate offense was not final. However, the trial court ruled that LSA-R.S. 15:529.1 only refers to convictions not sentences. Therefore, the trial court overruled the objection.
In support of his argument, appellant cites the Supreme Court decision in Townley v. Dept. of Public Safety & Corrections, 96-1940 (La.11/1/96), 681 So.2d 951. In Townley, the defendant was convicted on March 2, 1988 of simple burglary and simple criminal damage to property. On June 6, 1988, the defendant escaped from custody of the Department of Public Safety & Corrections. On September 27, 1988, the defendant was convicted of simple escape. He was subsequently adjudicated a third felony habitual offender based on the March 1988 convictions. However, the convictions "had not yet *409 been affirmed on appeal and become final for use as a basis for an enhanced sentence under La.R.S. 15:529.1." The defendant appealed his adjudication as a third felony habitual offender, and the Third Circuit Court of Appeal set aside the adjudication on the grounds that the March 1988 convictions were not final and could not be used as predicate convictions under LSA-R.S. 15:529.1.[2] Nevertheless, the Department of Public Safety & Corrections classified the defendant as a third felony offender for purposes of determining parole eligibility. In addressing the issue of the defendant's parole eligibility, the Supreme Court stated:
This court has previously held that a conviction must have become final before it can serve as a basis for an enhanced sentence under La.R.S. 15:529.1. See State ex rel. Jackson v. Donnelly, 486 So.2d 729 (La.1986); State ex rel. Clark v. Hunt, 337 So.2d 438 (La.1976); State v. Gani, 157 La. 231, 102 So. 318 (1924). Therefore, as Townley's 1988 convictions for simple burglary and criminal damage to property were not final, they could not be used under the Habitual Offender Law, La.R.S. 15:529.1, to enhance his sentence.
96-1940 at p. 2, 681 So.2d at 952 (Emphasis ours).
In State v. Brass, 93-2482 (La.App. 4 Cir. 2/11/94), 632 So.2d 819, the defendant was convicted on September 19, 1978, for possession of stolen things following a bench trial. However, the defendant was released on bond pending sentence. On September 21, 1978, the defendant was arrested and charged with armed robbery, for which he was convicted on February 8, 1979. He was adjudicated a second felony habitual offender on February 22, 1979, based upon his September 19, 1978 conviction. The defendant argued that he should not have been adjudicated as a second felony offender because he had not been sentenced on the 1978 conviction for possession of stolen things.
This Court opined that because the subsequent offense occurred prior to sentencing for the purported predicate offense, the conviction for the predicate offense was not yet final. Therefore, the 1978 conviction for possession of stolen things could not be used as a basis for finding the defendant to be a second felony habitual offender. In rendering its decision, this court cited State v. Gani, 157 La. 231, 102 So. 318 (1924) and State v. Lewis, 564 So.2d 765 (La.App. 2 Cir.1990).
In Gani, the defendant was charged, convicted, and sentenced for the second offense of selling "intoxicating liquor for beverage purposes," when his conviction for the first offense selling of intoxicating beverages was pending on appeal. The Supreme Court, interpreted the term "conviction" to mean a judgment of conviction that has not been appealed from or which has been affirmed on appeal. The court further held that the evidence of such prior conviction had to be before the court "at least" at the time of the second conviction.
In State v. Lewis, 564 So.2d 765 (La.App. 2 Cir.1990), the defendant's conviction for the predicate offense was pending on appeal at the time of his arrest for the subsequent offense. The court considered State v. Gani, and this court's decision in Sportservice Corp. v. Department of Public Safety, 293 So.2d 530 (La.App. 4 Cir.1974), discussed infra, as well as secondary sources. See A.L.R.2d and Am.Jur.2d.
Based on this Court's decision in Brass, and other cited jurisprudence, we conclude that Bentley should not have been adjudicated as a third felony habitual offender because his 1989 conviction had not become final at the time of his sentencing in the case sub judice. Therefore, Bentley's adjudication and sentence as a third felony habitual offender are vacated and set aside.

PRO SE ASSIGNMENT OF ERROR NO. 1
In this assignment of error, Bentley claims that the trial court erred in denying his motion to suppress the cocaine seized from him by Officer Neeley.
*410 At the motion to suppress hearing, Officer Neeley testified substantially as he did at trial. After hearing Officer Neeley's testimony, the trial court denied Bentley's motion to suppress on the grounds that the cocaine was classified abandoned property. The court further denied the motion as to the eighty-one dollars seized from defendant on the grounds that it was seized incident to a lawful search.
A law enforcement officer may stop a person in a public place whom he reasonably suspects or believes is committing a crime. La.C.Cr.P. art. 215.1. State v. Short, 96-1069, p. 3 (La.App. 4 Cir. 5/7/97), 694 So.2d 549, 551. Reasonable suspicion for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. Id; State v. Matthews, 94-2112, p. 3 (La.App. 4 Cir. 4/26/95), 654 So.2d 868, 870. Probable cause to arrest exists when the facts and circumstances known to the officer are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime. State v. Matthews, 94-2112 at p. 5, 654 So.2d at 871.
However, it is well-settled that police officers do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in public. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208, 1209. A person's liberty and privacy are not violated when a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away. State v. Burns, 95-1500, p. 7 (La.App. 4 Cir. 6/5/96), 675 So.2d 1233, 1237. Only when an individual is actually stopped without reasonable cause, or if such a stop is imminent, are his rights infringed. Id. While the Fourth Amendment protects individuals from actual stops, La. Const. art. 1, § 5 also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on rehearing by 626 So.2d 720 (La.1993).
It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent." Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
State v. Tucker, 626 So.2d at 712-13.
In Tucker, police conducted a drug sweep of a high crime area in Shreveport, Louisiana. Approximately ten to twelve police cars carrying twenty to thirty officers converged on a business. As two officers neared the target location, two men separated and began to leave the area. One officer stopped his car and began to get out while simultaneously ordering the two men to "halt" and "prone out." One man did as ordered, but the defendant moved several steps toward the rear of the business and tossed away a plastic bag containing forty-seven marijuana cigarettes, before obeying the police command and lying down. On appeal to the Louisiana Supreme Court, the court applied the foregoing factors and held that an actual stop of the defendant was not "virtually certain" to occur. The court based its decision on the fact that the police were "several feet" away from the defendant at time of the encounter and that the defendant "had a lead of several feet between himself and the officers." Because the officers had not drawn their weapons and surrounded the defendant, the Supreme Court reasoned that a stop was not imminent.
*411 In State v. Britton, 93-1990 (La.1/27/94), 633 So.2d at 1209, two police officers were on routine patrol when they observed several men shooting dice in front of a gas station. The men saw police and sprang to their feet while the defendant walking hastily into the gas station. The officers exited their patrol car, followed the defendant into the gas station, and observed him discard a packet containing several rocks of crack cocaine. Reversing this court's finding that the officers lacked reasonable suspicion to stop the defendant,[3] the Supreme Court held that the officers had not forcibly detained the defendant or made a showing of their authority until the defendant had discarded the cocaine. 633 So.2d at 1209.
Applying the factors in Tucker to the case sub judice, we concluded that the investigatory stop made in this case was proper. Bentley appeared to have been at least "several feet" away from the officers when the officers exited their vehicle. Bentley had the opportunity to walk away as evidenced by his walking away and returning moments later to where the second subject was standing. Unlike Tucker, the defendant in this case had not been commanded to "halt" or to "prone out." before he voluntarily returned to the scene. In fact, the officers apparently said nothing to Bentley until they saw the contraband stuffed into his mouth. Therefore, Bentley would have been much more justified in believing he was free to walk away from the officers than the defendant in Tucker. The officers had not surrounded Bentley, and there was no evidence to indicate that Bentley was not free to leave. Additionally, no evidence or testimony was presented to show that the arresting officers had drawn their weapons before Bentley was ultimately detained.
Once Officer Neeley noticed the white substance in the defendant's mouth, he immediately had probable cause to arrest him for possession of cocaine with the intent to distribute despite the fact that the defendant discarded the cocaine in the rear of the police unit. The eighty-one dollars was lawfully seized pursuant to a search incident to his arrest.[4] Accordingly, the trial court properly denied defendant's motion to suppress the evidence.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 2
In his third assignment of error, Bentley claims the evidence was insufficient to support his conviction.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. [307,] 318-19, 99 S.Ct. [2781,] 2789[, 61 L.Ed.2d 560 (1979)]; State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (1988).
When a conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat.Ann. Sec. 15:438 (West 1992); State v. Camp, 446 So.2d 1207 (La. 1984). This is not a stricter standard of review, but it is an evidentiary guide for the jury when it considers circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). When circumstantial evidence is sufficient to convict beyond a reasonable doubt and a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and, unless another hypothesis creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
To support a conviction for possession of a controlled dangerous substance with intent to distribute, the State must prove *412 that the defendant knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. La.Rev.Stat.Ann. Sec. 40:967 (West 1992). Specific intent to distribute may be established by proving circumstances surrounding the defendant's possession, which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4th Cir.1989). Factual circumstances from which such intent can be inferred include: previous distribution by the defendant; the presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and, packaging in a form usually associated with distribution rather than personal use. State v. Hechavarria, 575 So.2d 444, 448 (La.App. 4 Cir. 1991).
State v. Smith, 94-1502, pp. 3-4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1081.
In the instant case, the arresting officers saw a significant amount of what they believed to be cocaine in defendant's mouth. They recovered thirty-four individually packaged rocks of crack cocaine from the rear of their police car that defendant presumably spit out of his mouth. Officer Neeley testified he checked the police cruiser prior to the start of his shift, and no objects were found. The substance was identified as cocaine by a New Orleans Police Department criminalist, and defense counsel willingly stipulated to the report. The defense did not present a witness to testify that the amount of cocaine seized was consistent with personal use, or that the way the cocaine was packaged was usually associated with personal use rather than distribution. Thus, we find that the quantity alone was sufficient to support the element of intent to distribute in the case at bar. See State v. King, 95-1648 (La.App. 3 Cir. 10/9/96), 683 So.2d 1228.
In the instant case, the jury's conviction for possession of cocaine with the intent to distribute considering that Bentley was found standing on a street corner in a high drug trafficking area, with thirty-four individually wrapped rocks of crack cocaine in his possession. Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of possession of cocaine with intent to distribute present beyond a reasonable doubt. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant claims the trial court erred in failing to consider the sentencing guidelines in La.C.Cr.P. art. 894.1 when sentencing him. Having vacated Bentley's sentence and remanded for resentencing, this assignment of error is moot.

DECREE
Bentley's conviction is affirmed; his adjudication and sentence as a third felony habitual offender is vacated, and the matter remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] In defendant's fourth assignment of error, he requests a review for errors patent.
[2] State v. Townley, supra, 627 So.2d 252 (La.App. 3 Cir.1993), writ denied, 93-3011 (La.2/4/94), 633 So.2d 169.
[3] State v. Britton, 621 So.2d 890 (La.App. 4 Cir. 1993).
[4] State v. Matthews, 94-2112 at p. 5, 654 So.2d at 871.