11WALTZER, Judge.
STATEMENT OF THE CASE
On 16 July 1999 the State filed a bill of information charging the defendant-appellant with one count of possession of cocaine, a violation of La.R.S. 40:967. The defendant was arraigned and entered a not guilty plea on 20 July 1999. On 13 August 1999, after having heard testimony, the trial court denied the defendant’s motion to suppress evidence. On 8 September 1999, the defendant withdrew his former plea of not guilty and entered a plea of guilty, reserving his right to appeal under State v. Crosby, 338 So.2d 584 (La.1976). The court accepted the plea and set the matter for sentencing on 15 September 1999. On that date, the trial court granted the motion to appeal fried by defendant’s counsel and denied the defendant’s motion to withdraw his guilty plea; however, the minute entry for that date does not show that the defendant was sentenced as scheduled. On 23 March 2000, the State filed a multiple bill charging the defendant as a second offender. The defendant entered a guilty plea and was sentenced to thirty months at hard labor -without the benefit of probation or suspension of sentence with credit for time served, to run concurrently with any other sentence, including parole ^revocation, which the defendant might be serving. The trial court also advised the defendant of the time limits under La.C.Cr.P. art. 930.8.

STATEMENT OF FACTS

Detective Chris Cambiotti of the New Orleans Police Department, Eighth District, testified at the preliminary hearing and hearing on the motion to suppress evidence that he and his partner were on patrol, in plain clothes and in an unmarked *814 police vehicle that was unlikely to be recognized as such on 30 June 1999 at about 5 p.m. in the area of Rampart and Conti Streets. As they were crossing Rampart Street, they observed the defendant throw some facial tissues to the ground. The officers, who had been directed by supervisors a few days before “to start enforcing quality of life violations, such as littering,” stopped and got out of the car. As they approached the defendant to give him a warning about littering, they observed him drop an object to the ground and then begin to cross Rampart Street. Detective Cambiotti picked up the object which the defendant had dropped and discovered it was a glass crack pipe. He informed his partner of that fact, who placed the defendant under arrest.
Detective Cambiotti testified that it appeared to him the defendant was startled by the police officers. According to the detective, they were in a new type of unmarked police vehicle which many people would not recognize. The detective was of the opinion that the defendant did not know they were police officers until “he actually saw the badges and guns.” He reiterated on cross-examination that the defendant appeared startled by them and that the defendant dropped the crack pipe when he first saw the officers’ badges and guns.

J¿ERRORS PATENT

A review of the record reveals one error patent. The defendant’s motion for an appeal was made and granted prior to sentencing. Although a defendant may appeal only from a final judgment of conviction where a sentence has been imposed, this Court has held that the appeal will not be dismissed when the sentence was imposed after the granting of a motion for appeal. State v. Bryant, 98-1115 (La.App. 4 Cir. 8/4/99), 744 So.2d 108, writ denied 99-2617 (La.3/17/2000), 756 So.2d 322.

ANALYSIS

In his only assignment of error, the appellant contends that the trial court erred when it denied the motion to suppress evidence. The appellant argues that the police had neither reasonable suspicion nor probable cause to stop or arrest him based on allegedly littering. The appellant suggests that he had a right to be left alone as he stood on the sidewalk. In support of his argument, the appellant cites State v. Hoye, 94-0445 (La.App. 4 Cir. 4/14/94), 635 So.2d 1289. This Court recently discussed and reaffirmed Hoye in State v. Lackings, 2000-K-0423, p. 2 (La.App. 4 Cir. 4/5/00), 759 So.2d 918, writ denied. In Lackings, the defendant was observed with an open beer container, a violation of the Municipal Code of the City of New Orleans, sec. 54-404. When he failed to produce identification, the police arrested him in lieu of issuing a summons. Contraband was discovered in the subsequent search incidental to the arrest. This Court reaffirmed its holding in Hoye:
“[Pjeople have a constitutional right to stand on the corner in that type of area with a beer can and not have to be subjected to police intrusion.” Hoye, p. 2, 635 So.2d at 1290. This Court agreed with the trial court’s ruling “[ujnder these facts.” Id.
| ¿However, the instant case is distinguishable from Hoye and Lackings in that the contraband was not discovered in a search or frisk of the defendant following an arrest. Instead, the testimony indicates that the defendant dropped the crack pipe when he observed the police officers, who had not been identified to him as such, approaching him. There was no indication in the testimony that the officers were going to arrest or issue a summons to defendant for littering. Their stated intention was to warn him, consistent with their new “quality of life” directive. As this Court recently noted in State v. Press, 99-2222, p. 4 (La.App. 4 Cir. 4/19/00), 767 So.2d 56, 59:
Police officers enjoy the same liberty possessed by every citizen to address questions to other persons. State v. *815 Thomas, 98-1024 (La.App. 5 Cir. 3/10/99), 734 So.2d 39. As the Second Circuit stated in State v. Haygood, 26,102 (La.App. 2 Cir. 8/17/94), 641 So.2d 1074, 1077, writ denied, 94-2373 (La.1/13/95), 648 So.2d 1337:
The mere fact that police approach and address a person does not compel that individual to respond to the inquiries or comply with the requests. Legally, nothing prevents him from choosing not to answer and leaving the scene. State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Desormeaux, 569 So.2d 283 (La.App. 2d Cir.1990). Despite the fact that unsolicited assistance, unasked-for conversation, and unrequested advice are not always welcome, the Constitution provides no protection against such everyday annoyances whether caused by a policeman or an ordinary citizen. State v. Neyrey, supra. Mere police questioning does not constitute a seizure. Florida v. Bostick, supra [501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)]; I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).
In State v. Matthews, 94-2112 ( La.App. 4 Cir. 4/26/95); 654 So.2d 868, this Court clarified the difference between an investigatory stop or detention and an approach:
In California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court delineated the point at which a suspect’s rights have been infringed upon.... The Court held that until the |5individual either submits to the police show of authority or is physically contacted by the police, he is not seized. The Louisiana Constitution, however, affords a higher standard of individual liberty than the Fourth Amendment of the United States Constitution because Article 1, Section 5 of the Louisiana Constitution protects citizens against an “invasion of privacy.” State v. Church, 538 So.2d 993, 996 (La.1989). The Louisiana Supreme Court , has held that an individual is “seized” within the meaning of Article 1, Section 5 of the Louisiana Constitution when he is either “actually stopped” or when an actual stop is “imminent.” State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In State v. Tucker, 626 So.2d 707 (La.1993), opinion adhered to on rehearing, 626 So.2d 720 (1993), the Louisiana Supreme Court adopted the Hodari D. definition of “actual stop,” holding that an actual stop of a person occurs only when he submits to a show of police authority or is physically contacted by the police. Id., 626 So.2d at 712. The Court also explained the factors to be considered in determining whether an “actual stop” is “imminent.” The Court declared:
It is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an ‘actual stop’ of the individual is ‘imminent.’ Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an ‘actual stop’ of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. (Footnotes omitted; emphasis in original).
Id., 626 So.2d at 712-713.
*816 Matthews, 94-2112 at pp. 3-4, 654 So.2d at 870-871.
In State v. Poche, 99-0039 (La.App. 4 Cir. 5/5/99), 733 So.2d 730, this Court found that an actual stop was not certain to occur where the police flashed their lights and pulled their car up to the defendant, who was standing on Basin Street, without telling him anything.
In this case, Detective Cambiotti’s un-contradicted testimony established that the defendant dropped the crack pipe as soon as he saw the officers exiting their vehicle and before they had detained him in anyway. Because the crack pipe was abandoned by the defendant before any unlawful intrusion into his right to freedom from governmental interference, the contraband was lawfully seized. See State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208. Thus, the trial court did not err when it denied the defendant’s motion to suppress the evidence.

CONCLUSION

In light of the foregoing, the defendant’s conviction and sentence are affirmed.
AFFIRMED.