729 So.2d 664 (1999)
STATE of Louisiana
v.
Tyron B. ASH
No. 97-KA-2061.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1999.
*666 Harry Connick, District Attorney, Richard R. Pickens II, Assistant District Attorney, New Orleans, Louisiana, for State.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, for the defendant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Judge.
Tyron B. Ash appeals his conviction for possession of cocaine with intent to distribute, for which he was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence as a quadruple offender. We affirm.

STATEMENT OF THE CASE
On May 30, 1996, defendant, Tyron B. Ash, was charged by bill of information with possession of cocaine with the intent to distribute in violation of La.R.S. 40:967. After a preliminary and suppression hearing on July 10, 1996, the trial court found probable cause and denied defendant's motion to suppress evidence. At trial on October 10, 1996, the jury found Ash guilty as charged. The trial court denied Ash's motions for new trial and post verdict judgment of acquittal on February 14, 1997. At a multiple offender hearing on February 27, 1997, the trial court found that the defendant was a fourth felony offender. The defendant waived all legal delays and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On March 3, 1997, the trial court denied Ash's motion for reconsideration of sentence. Ash's appeal followed.

STATEMENT OF FACTS
On April 23, 1996, New Orleans Police officers Bryan Lampard and Jake Schnapp were on proactive patrol around the intersection of Josephine and LaSalle Streets. As the officers proceeded in an uptown direction on LaSalle towards Jackson Avenue, they observed Ash and an unknown female engaged in a conversation. When the officers approached the middle of the block, they noticed that Ash had his right hand extended. The female was looking down at his hand. Ash looked up, saw the approaching police vehicle, quickly closed his hand, and started walking in a lake bound direction on Josephine Street. The officers followed Ash and turned onto Josephine Street. The officers observed Ash sitting in front of 2415 Josephine Street next to a man later identified as Kenneth Williams. When the officers stopped the police vehicle, Ash started running in a river bound direction on Josephine Street. Ash turned in a downtown direction when he got to the intersection of Josephine Street and LaSalle Street. The officers broadcast the defendant's description and location.
Officer Lampard pursued Ash on foot as he ran down LaSalle Street towards St. Andrew Street. As he reached St. Andrew Street, Ash entered a vacant lot. When Ash reached a tree stump in the lot, he took two objects from his waistband and discarded them. Ash lost his footing and fell face down in the lot. Officer Lampard apprehended Ash, handcuffed him, and patted him for weapons. The officer found no weapons on Ash. After Officer Schnapp arrived, Lampard turned Ash over to Schnapp. Lampard then walked back to the two objects that the officer had seen Ash discard. The officer found two plastic ziploc-type bags on top of a piece of plywood. One of the bags contained eight pieces of crack cocaine. The other bag contained thirteen pieces of crack cocaine and eighteen smaller bags of cocaine powder. Ash subsequently was arrested and advised of his rights. Thirty-six dollars were found on Ash during a search incident to the arrest. It was stipulated at trial that the substances found in the plastic bags tested positive for cocaine.
Kenneth Williams testified that when Ash came to sit by him, Ash did not have any drugs. Ash had a beer in a paper bag. Williams stated that when Ash started running *667 from the police, Ash threw the beer away.
Stacey Anderson stated that on the day of the incident she was visiting a friend who lived on LaSalle Street. She saw Ash running from the police, and Ash did not throw anything down.
The defendant's mother, Ernestine Ash, testified that the defendant had been working continually since he was released from prison three years ago. Angela Allen, the defendant's girlfriend, stated that the defendant had been working to support their family. On the day of the incident, she and Ash had a fight about an ex-boyfriend, and she threatened to call the police. Terry Ratcliff and Martie Allen, the defendant's in-laws, testified that Terry took Ash to work every day at Avondale Shipyards.
On the day of the incident, Kayonna Holloway was speaking with Ash before the police arrived. Ash did not extend his hand to her or give her anything. Ash told her about the fight he had with his girlfriend. Ms. Holloway stated she saw Ash run from the police and fall in the lot. She testified that Ash did not drop anything before he fell.
Maurice Perkins testified that he was in the area when Ash got arrested. Mr. Perkins stated that he was well acquainted with the area, including the vacant lot. He stated that there was a lot of junk in the lot, but no plywood. However, he admitted that he really did not check the lot for plywood. The witness also acknowledged that he had a prior narcotics conviction and had been arrested at the intersection of Josephine and LaSalle.
The defendant, Tyron Ash, testified that earlier in the day on April 23, 1996, he and his girlfriend had a fight. When he struck her, she threatened to call the police. Ash then left the house. While Ash was talking to Kayonna Holloway at the intersection of Josephine and LaSalle, he saw a police car drive into the area. Ash told Kayonna about the fight with his girlfriend. Ash then left the area and went to sit by Kenneth Williams. When the police followed him, he ran because he thought his girlfriend had called the police. Ash denied having any drugs on him. He further stated he did not throw anything down. He had been working at Avondale Shipyards and at an uniform store since he was released from jail. Ash admitted that he had three prior convictions for possession of cocaine.

Errors Patent
A review of the record for errors patent reveals none.

Assignment of Error No. 1
Ash contends that the evidence produced by the state was insufficient to sustain his conviction for possession of cocaine with the intent to distribute. Ash argues there was no evidence presented to prove an intent to distribute cocaine.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La. 1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir. 1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La. 1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate *668 review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La. 1987).
In the present case, Ash was convicted of possession of cocaine with intent to distribute that requires that the state prove that he "knowingly" and "intentionally" possessed cocaine with the "intent to distribute." State v. Williams, 594 So.2d 476, 478 (La. App. 4 Cir. 1992). Distribution of cocaine requires only general intent. State v. Pollard, 93-1960 (La.App. 4 Cir. 7/14/94), 640 So.2d 882.
In State v. Hearold, 603 So.2d 731, 735 (La. 1992), the Louisiana Supreme Court provided factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance:
These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
In State v. Cushenberry, 94-1206, p. 6, (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786, this court described the Hearold factors as "useful" but held that the evidence need not "fall squarely within the factors enunciated to be sufficient for the jury to find that the requisite intent to distribute."
In State v. King, 95-1648 (La.App. 3 Cir. 10/9/96), 683 So.2d 1228, the facts closely resemble the facts in the present case. In King, the police proceeded to investigate, having received complaints of drug activity in the area. A team of officers parked two police units and walked into the area. The police observed a large group of individuals on the porch of a residence. A vehicle pulled up with its headlights out, and the officers suspected a drug transaction was taking place. When the police approached, the individuals ran away. An officer chased King into a nearby vacant lot where King discarded a plastic bag and then fell down. The police retrieved the plastic bag that contained 30 rocks and crumbs of cocaine.
The appellate court stated:
... King argues: 1) there was no testimony of actual or attempted distribution by the defendant; 2) the seized cocaine was all in a single plastic bag and not individually packaged for sale; 3) and 4) there was no expert testimony offered to show the amount of cocaine seized was or was not consistent with personal use; and 5) no other drug paraphernalia was found.
We note that the weight and volume of the cocaine is not in the record. The testimony and the documentary evidence sate that approximately thirty (30) "rocks and crumbs" were in the plastic bag discarded by the defendant. Obviously, the court does not have the fact finder's benefit of visual inspection. In these circumstances, we must defer to the jury's apparent decision that the amount of cocaine indicates an intent to distribute. This court has consistently held intent to distribute can be inferred form the amount of narcotics possessed. State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir. 1992), writ denied, 609 So.2d 222 (La. 1992), writ denied, 623 So.2d 1326 (La. 1993). It is well settled that the weight of the evidence is within the fact finder's discretion. We find no error in the jury's finding that the 30-rock quantity was enough to support the intent to distribute.

Id., 683 So.2d at 1228.
A reviewing court must take into account the "totality of the circumstanceswhole picture," giving deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." Cortez, 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La. 3/13/98), 708 So.2d 1048. Citing Cortez, the Louisiana Supreme Court further noted that: "The court must also weigh the *669 circumstances known to the police not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Huntley, supra, 708 So.2d at 1049.. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. In the present case, the officers testified that at the intersection of LaSalle and Josephine, they observed Ash and a young female conversing, and Ash had his right hand extended. From their past experience the officers believed the defendant was engaging in a narcotics transaction in an area known for drug trafficking.
In the present case expert testimony was unnecessary to establish that the substantial amount of cocaine found in Ash's possession was inconsistent with personal use. Officer Lampard testified that he observed Ash discard two objects while the defendant was running from the officer. After the officer apprehended Ash, the officer retrieved the items abandoned by Ash. The police found two plastic ziploc-type bags on top of a piece of plywood. One of the bags contained eight pieces of crack cocaine. The other bag contained thirteen pieces of crack cocaine and eighteen smaller bags of cocaine powder. It was stipulated at trial that the substances found in the plastic bags tested positive for cocaine. The state provided evidence of the substantial amount of cocaine found (twenty-one rocks of crack cocaine and eighteen bags of powder cocaine). The weight of the evidence is within the fact finder's discretion. We defer to the jury's determination that the amount of cocaine indicates an intent to distribute. We find no error in the jury's finding that the quantity was enough to support the intent to distribute, and therefore, this assignment has no merit.

Assignment of Error No. 2
Initially, Ash assigned as error the alleged failure of the trial court to instruct the jury on the elements of the charged offense. The appellate record was subsequently supplemented with a corrected copy of the trial transcript that revealed that the trial court had instructed the jury on the charged offense. Thereafter, Ash abandoned this assignment of error.

Assignment of Error No. 3
Ash also contends that he received ineffective assistance of counsel when his trial counsel failed to object to the state's improper cross-examination of the defendant concerning the defendant's prior convictions.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir. 1990). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir. 1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Id., 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir. 1992).
*670 Ash contends his trial counsel erroneously failed to object to the state's cross-examination concerning Ash's three prior convictions for possession of cocaine. During direct examination, defense counsel asked Ash about his prior convictions. Ash stated that he had two or three prior convictions. Upon cross-examination, the state sought to clarify the number of Ash's prior convictions. The state elicited from Ash that he had been convicted three times for possession of cocaine. Each conviction was based upon an arrest in the vicinity of LaSalle and Josephine Streets.
La.Code of Evidence article 609.1 sets forth the limitations on the use of a witness' convictions in order to impeach the witness' credibility. La.C.E. art. 609.1 provides in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into the matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, the details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
In the present case, Ash originally denied recollection of all three prior convictions. Ash acknowledged two prior convictions during cross-examination by the state. Ash testified that he served sentences on two prior convictions. When asked about a third conviction, Ash stated that he did not know if he had two or three convictions. The state then questioned Ash about his arrests for the three convictions. The state went through each conviction and ascertained that all three convictions arose from arrests in the area of LaSalle and Josephine Streets. As Ash denied his third prior conviction for possession of cocaine, the state was allowed to use details of the arrest and conviction to prompt Ash's memory. The evidence of the locations of Ash's prior arrests was used to refresh Ash's memory of his prior convictions. As such questioning was permissible under La. C.E. article 609.1, Ash's trial counsel had no basis to object to the state's examination of the defendant, and counsel was not ineffective for failing to object.
This assignment of error is without merit.

Assignment of Error No. 4
In his last assignment, Ash argues that the sentence imposed by the trial court was unconstitutionally excessive. After finding that Ash was a fourth felony offender under the multiple offender statute, the trial court sentenced the defendant to mandated sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Ash claims that the trial court should have applied State v. Dorthey, 623 So.2d 1276 (La. 1993), to his circumstances and sentenced him to a term of imprisonment less than the minimum required by the statute.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering. State v. Caston, 477 So.2d 868 (La.App. 4 Cir. 1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1. State v. Quebedeaux, 424 So.2d 1009 (La. 1982). The reviewing court must determine whether the sentence *671 imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La. 1983).
The sentencing judge must always start with the presumption that the mandatory minimum sentence under the Habitual Offender Law is constitutional and may only depart from the minimum sentence, if it finds clear and convincing evidence rebutting the presumption; departures downward from a mandatory minimum sentence under the Habitual Offender Law should occur only in rare situations, and cannot be premised solely on the nonviolent nature of the current or prior offenses. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. In that case the Louisiana Supreme Court noted that the legislature's determination of the appropriate minimum sentence should be given great deference by the judiciary.
In State v. Green, 437 So.2d 302 (La.App. 2 Cir. 1983), writ denied, 443 So.2d 1121 (La. 1984), Green had prior convictions for simple robbery, forgery and felony theft. After being convicted of possession of preludin, the trial court adjudicated Green a quadruple offender and sentenced him to life imprisonment, and this sentence was affirmed on appeal.
In the present case, prior to imposing the sentence mandated by the multiple offender statute,[1] the trial court stated:
[M]y concern is in a seven year period, he [the defendant] received four felony convictions. The last one being the most serious one out of the bunch. A lot of times I have concerns when someone has a possession with intent to distribute or a distribution seven or eight years ago and then they have a conviction now, I find it hard sometimes to sentence someone to a life sentence because they weren't charged with a very serious offense this time. But this time he is convicted of a very serious charge and I'm not going to deviate from the sentencing requirements of 15:529.1.
Mr. Ash, as a quadruple offender, I'm going to sentence you to serve life imprisonment. That sentence will be without let me check the language. It says "without benefit of probation, parole or suspension of sentence."
Given that Ash had committed four felonies in seven years, all of which involved the possession of narcotics, in the present case the trial court concluded that Dorthey was not applicable. Ash was found with a substantial amount of cocaine (twenty-one rocks of crack cocaine and eighteen bags of powder cocaine) and convicted of possession with the intent to distribute. The trial court did not err in imposing the mandatory minimum sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence upon finding Ash to be a quadruple offender. Ash's sentence was not unconstitutionally excessive.
Accordingly, the defendant's convictions and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 15:529.1(A)(2)(c)(ii) provides that: "[i]f the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence."

La.R.S. 40:967(B) imposes a minimum sentence of five years at hard labor without benefit of probation, parole, or suspension of sentence on a person who has been convicted of possession of cocaine with the intent to distribute.