ROLAND L. BELSOME, Judge.
 

 [ Defendant-Appellant appeals his conviction and sentence. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Agent Chris Johnson was employed with the narcotics division of the Plaquemines Parish Sheriffs Office. Agent Johnson testified that on March 6, 2007, at approximately 3:55 p.m., he received an anonymous tip from an informant who stated that defendant and an individual named Kara Sylve were en route from Hammond, Louisiana to the Diamond, Louisiana, FEMA trailer park in Plaquemines Parish with a large amount of crack cocaine. The caller described the vehicle in which defendant and Ms. Sylve were riding as a tan Nissan Sentra registered to Ms. Sylve. Agent Johnson testified that he and several other agents proceeded to an area in Belle Chasse, Louisiana to intercept the vehicle, which was expected to arrive in approximately one hour.
 

 Shortly after receiving a radio message from Captain Ty Wiltz
 
 [1]
 
 regarding a visual of the vehicle matching the description of the suspect vehicle traveling southbound in the 8600 block of Highway 23, Agent Johnson testified that he |2made visual contact with the suspect vehicle as well, and that the number of occupants, vehicle type and color matched the description given by the anonymous caller. Agent Johnson stated that he observed that the vehicle appeared to be traveling at a higher rate of speed than was the posted speed limit; accordingly, he activated his radar and clocked the suspect vehicle traveling at fifty-two miles per hour in a forty-five mile per hour speed zone. Once the speed of the vehicle was determined, Agent Johnson followed the suspect car to conduct a traffic stop,
 
 observing
 
 that the driver also made an illegal lane change without signaling and that the front passenger was not wearing a seat belt.
 

 After Agent Johnson activated his siren and light bar to stop the vehicle, the driver stopped in the parking lot of a Circle K gas station located at 9144 Highway 23. Agent Johnson testified that he approached the driver’s side of the vehicle
 
 *1173
 
 and identified the driver as Kara Sylve, with whom he was familiar; advised her that she was being stopped for speeding, improper lane change, and a seat belt violation. Agent Johnson testified that the male passenger then exited the front of the vehicle and spontaneously declared, “I guess y’all are looking for drugs, I ain’t got no drugs and you can’t search the car unless you have a warrant.” Agent Johnson stated that his suspicions that the anonymous tip was correct were heightened, as he not asked either Ms. Sylve or defendant if they were in possession of any drugs.
 

 Agent Johnson further testified that Lieutenant Brandon Mouriz approached the front passenger side of the vehicle and identified the male passenger as defendant, Brandon Duncan. Both Ms. Sylve and defendant were advised of their
 
 Miranda
 
 rights. Agent Johnson requested permission from Ms. Sylve to search the vehicle; she consented, then subsequently changed her mind and refused to allow lathe search. At that time, Agent Johnson contacted Agent Carole Baroni, one of the volunteer canine officers, and requested that she come to the scene and conduct a canine sweep of the vehicle for narcotics.
 

 Agent Baroni,
 
 [2]
 
 a commissioned volunteer with the Plaquemines Parish Sheriffs Office, accompanied by her canine Tosca, testified that on March 6, 2007, she arrived at the Circle K on Belle Chasse Highway in response to a request by Agent Johnson and was briefed on the reason for the search. After making a safety check around the vehicle for any substance that could cause harm to Tosca, Tosca walked around the suspect vehicle from the rear driver’s side to the front passenger side. When Tosca approached the seam between the driver’s door and the rear passenger door, Agent Baroni testified that Tosca jumped onto the side of the car and scratched on the seam area, describing this behavior as Tosca’s signal that she had a positive odor response for narcotics. Agent Baroni notified Agent Johnson of Tosca’s response.
 

 Agent Johnson testified that he subsequently conducted a search of the vehicle, observing on the rear seat a pile of blankets, pillows and a jacket, underneath which Agent Johnson discovered a brown paper bag. Agent Johnson further testified that inside the brown paper bag were two large clear plastic bags containing a large amount of a rock-like substance that appeared to be cocaine. Agent Johnson stated that pursuant to this discovery, both Ms. Sylve and defendant were placed under arrest for possession with intent to distribute cocaine, at which time Ms. Sylve became very upset and screamed to defendant, “How could you do Lthis to me? Why did you put that [expletive] in my car?”
 
 [3]
 
 Defendant responded by shrugging his shoulders, but did not admit that the cocaine belonged to him.
 

 On cross-examination, Agent Johnson stated that the cocaine could not be seen from outside of the vehicle or from the front passenger seat, as it was hidden inside a brown paper bag and covered with blankets, pillows and a jacket. He identified the car as belonging to Ms. Sylve and confirmed that she was the driver. Agent Johnson stated that he was familiar with defendant because defendant was known to him as a narcotics dealer and was the subject of an ongoing narcotics investigation. He further testified that although there was no direct evidence that the cocaine was placed in the car by defendant,
 
 *1174
 
 that after defendant was Mirandized and as he was placing him into the police car, defendant told him, “I ain’t getting out of the dope game until they give me life.”
 

 Carole Baroni,
 
 [4]
 
 a commissioned volunteer with the Plaquemines Parish Sheriffs Office, accompanied by her canine Tosca, testified that on March 6, 2007, she arrived at the Circle K on Belle Chasse Highway in response to a request by Agent Johnson and was briefed on the reason for the search. After making a safety check around the vehicle for any substance that could cause harm to Tosca, Tosca walked around the suspect vehicle from the rear driver’s side to the front passenger side. When Tosca approached the seam between the driver’s door and the rear passenger door, Agent Baroni testified that Tosca jumped onto the side of the car and scratched on the seam area, describing this behavior as Tosca’s signal that she had a positive odor response for narcotics. Agent Baroni notified Agent Johnson of Tosca’s response.
 

 1 ¿Captain Ty Wiltz, supervising agent of the Plaquemines Parish Sheriffs Narcotics Division, was part of the surveillance team that intercepted the suspect vehicle. Captain Wiltz testified that he was the first officer to make visual contact with the suspect vehicle as it traveled southbound on Highway 23 and subsequently notified the other officers on the team. Officer Wiltz stated that he arrived shortly after the suspect vehicle was stopped by Agent Johnson and that he was present prior to the canine search and the cocaine being found. Approximately 600 pieces of rock cocaine were removed from the rear seat of the vehicle, weighing 125.34 grams, with a street value of twelve or thirteen thousand dollars, which Captain Wiltz testified was not an amount consistent with personal use.
 

 Captain Wiltz further testified that he asked defendant if he had any drugs in the car and if so, the location and whether they belonged to him, to which defendant responded, “Let her go”; however, defendant never admitted the cocaine belonged to him or that he knew that it was inside the vehicle. Captain Wiltz observed that defendant became very nervous when questioned and unsuccessfully attempted to flee. Captain Wiltz also stated that he knew defendant and had arrested him in the past for distribution of cocaine.
 

 Thereafter, on March 23, 2007, defendant was charged with possession of cocaine with intent to distribute, a violation of La. R.S. 40:967(A)(1). On April 2, 2007, he entered a plea of not guilty. On September 18, 2007, following a bench trial, defendant was found guilty as charged.
 
 [5]
 
 On October 8, 2008, defendant was |fisentenced to serve fifty years at hard labor with credit for time served and concurrent with his sentence in case number 2007-4286.
 
 [6]
 
 On October 29, 2008, defendant was adjudicated a fourth felony offender; his original sentence was vacated
 
 *1175
 
 and he was resentenced to serve fifty years at hard labor.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 DISCUSSION
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 By his first assignment of error, defendant asserts that the State failed to introduce evidence sufficient to support his conviction for possession with the intent to distribute cocaine. Specifically, he argues that the State failed to present any evidence that he was in possession of the cocaine or that he had knowledge that the cocaine was in the vehicle.
 

 In
 
 State v. Brown,
 
 the Louisiana Supreme Court set forth the standard for determining a claim of insufficiency of evidence:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 00-0674 (La.6/29/01)[,] 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)).
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 
 Neal,
 
 796 So.2d at 17657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury.
 
 Id.
 
 (citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986)).
 

 State v. Brown,
 
 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18.
 

 To support a conviction for possession of a controlled dangerous substance in violation of La. R.S. 40:967, the State must prove that the defendant knowingly and intentionally possessed the drug.
 
 State v. Perron,
 
 2001-0214, p. 6 (La.App. 4 Cir. 1/6/02), 806 So.2d 924, 928. “The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support the conviction.”
 
 Perron,
 
 2001-0214, p. 6, 806 So.2d 924, 928
 
 (citing State v. Trahan,
 
 425 So.2d 1222, 1226 (La.1983)). A person not in physical possession of narcotics may have constructive possession if the drugs are under that person’s dominion and control.
 
 Perron,
 
 2001-0214, p. 6, 806 So.2d 924, 928
 
 (citing State v. Jackson,
 
 557 So.2d 1034, 1035 (La.App. 4 Cir.1990)). Whether a defendant had constructive possession is determined based upon the circumstances of each case.
 
 Perron,
 
 2001-0214, p. 6, 806 So.2d 924, 928
 
 (citing State v. Cann,
 
 319 So.2d 396, 397 (La.1975)). “In determining whether defendant exercised the requisite dominion and control, factors which may be considered include his knowledge that illegal drugs are in the area, his relationship with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users.”
 
 Perron,
 
 2001-0214, p. 6-7, 806 So.2d 924, 928
 
 (quoting State v. Reaux,
 
 539 So.2d 105, 108 (La.App. 4 Cir.1989)).
 

 |sWith regard to the intent to distribute cocaine,
 
 [7]
 
 to sustain its burden, the State
 
 *1176
 
 was required to show that defendant possessed the cocaine and that he had the intent to distribute it. See
 
 State v. Howard,
 
 2000-2700 (La.App. 4 Cir. 1/23/02), 805 So.2d 1247, 1261;
 
 State v. Williams,
 
 594 So.2d 476, 478 (La.App. 4 Cir.1992). In
 
 Howard.,
 
 this Court discussed the State’s burden in proving the intent to distribute:
 

 Specific intent to distribute may be established by proving circumstances surrounding defendant’s possession which give rise to a reasonable inference of intent to distribute.
 
 State v. Dickerson,
 
 538 So.2d 1063 (La.App. 4 Cir.1989). In
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992), the Louisiana Supreme Court set forth five factors to consider in determining whether a party had the intent to distribute narcotics. Reversing the defendant’s conviction in that case, the court stated:
 

 Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred.
 
 State v. Fuller,
 
 414 So.2d 306 (La.1982);
 
 State v. Phillips,
 
 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In
 
 State v. House,
 
 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others;. (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
 

 I
 

 In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible.
 
 State v. Greenway,
 
 422 So.2d 1146 (La.1982);
 
 State v. Harveston,
 
 389 So.2d 63 (La.1980);
 
 State v. Willis,
 
 325 So.2d 227 (La.1975).
 

 Howard,
 
 at pp. 22-23, 805 So.2d at 1261-1262 (quoting
 
 State v. Hearold,
 
 603 So.2d 731, 735-36 (La.1992)(emphasis added). Moreover, this Court noted in
 
 Howard
 
 that “[i]n
 
 State v. Cushenberry,
 
 94-1206, p. 6 (La.App. 4th Cir.1/31/95), 650 So.2d 783, 786, this Court described the
 
 Hearold
 
 factors as ‘useful’ but held that the evidence need not ‘fall squarely within the factors enunciated to be sufficient for the jury to find the requisite intent to distribute.’ ”
 
 Howard,
 
 at pp. 22-23, 805 So.2d at 1261-1262 (quoting
 
 State v. Cushenberry,
 
 94-1206, p. 6, 650 So.2d 783, 786).
 

 In
 
 State v. Jones,
 
 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 399,
 
 State v. Ask,
 
 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669, and
 
 State v. Bentley,
 
 97-1552 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 412, this Court found sufficient evidence to support convictions for possession of drugs with the intent to distribute based merely upon the amount of drugs seized, even though in no case did the officers involved observe any suspected transactions, nor did the State present any expert testimony in these cases to indicate that
 
 *1177
 
 the amount of drugs seized was inconsistent with personal use.
 
 [8]
 

 [inWe find that the evidence supports the district court’s finding that defendant had, at a minimum, constructive possession of the cocaine, as the circumstances surrounding defendant’s possession gave rise to a reasonable inference of an intent to distribute.
 
 See Howard,
 
 at pp. 22-23, 805 So.2d at 1261-1262. Captain Wiltz testified that the amount of cocaine recovered from the vehicle was not an amount consistent with personal use.
 
 See also State v. Jones,
 
 731 So.2d at 399,
 
 State v. Ash,
 
 729 So.2d at 669, and
 
 State v. Bentley,
 
 728 So.2d at 412. Additionally, pursuant to the
 
 Perron
 
 factors, we find that defendant exercised the requisite dominion and control sufficient to establish constructive possession of the narcotics in this case; Agent Baroni’s canine gave a positive signal for the odor of narcotics in the area between the front and rear seats of the suspect vehicle; the search revealed cocaine hidden under several blankets, pillows and a jacket on the rear seat behind where defendant was seated; and defendant was known to the police officers as a drag dealer and had a previous conviction for possession of cocaine with intent to distribute.
 
 See Perron,
 
 2001-0214, p. 6-7, 806 So.2d 924, 928. Therefore, the amount of the cocaine in the vehicle that was inconsistent with personal use, defendant’s previous history of drug distribution, his nervous behavior and attempt to flee when questioned, and the defendant’s spontaneous statements were sufficient under these particular facts and circumstances to support a finding of possession of cocaine with the intent to distribute.
 
 See id.
 

 Moreover, it is well-settled that a factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.
 
 State v. Huckabay,
 
 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093, 1111;
 
 State v. Harris,
 
 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435. We cannot say that the |, factfinder’s determinations were clearly contrary to the evidence under these particular facts and circumstances.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In his second assignment of error, the defendant argues that the cocaine was illegally seized because there was no reasonable suspicion for an investigatory stop and no probable cause to arrest him. A review of the record reveals that the defendant did not file a motion to suppress evidence and did not object to the admission of the cocaine at trial. Accordingly, this issue has not been preserved for review on appeal. La.C.Cr.P. article 841.
 
 [9]
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 By his remaining assignment of error, defendant argues that the trial court
 
 *1178
 
 imposed an unconstitutionally excessive sentence of fifty years at hard labor. The claim for an excessive sentence was not preserved for appeal in this case. Counsel for defendant neither objected when the court imposed sentence nor filed a motion to reconsider sentence as mandated by La.C.Cr.P. art. 881.1.
 
 [10]
 
 This Court has 112held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim regarding his sentence on appeal.
 
 State v. Rodriguez,
 
 2000-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d
 
 640, 649; State v. Tyler,
 
 98-1667 (La.App. 4 Cir. 11/24/99), 13749 So.2d 767, 775. Because defendant in this case did neither, he is precluded from raising this issue on appeal.
 
 [11]
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Captain Ty Wiltz was the supervising agent of the Plaquemines Parish Sheriff’s Narcotics Division.
 

 [2]
 

 . The defense stipulated that Agent Carole Baroni was a certified canine handler and that her canine, Tosca, was a certified drug sniffer.
 

 [3]
 

 . Captain Wiltz also testified that Ms. Sylve made this remark and that defendant responded to the remark by shrugging his shoulders.
 

 [4]
 

 . The defense stipulated that Agent Carole Baroni was a certified canine handler and that her canine, Tosca, was a certified drug sniffer.
 

 [5]
 

 . Prior to the taking of testimony, the state and the defense stipulated that the Jefferson Parish Sheriff's Office Crime Lab report, that State's Exhibit 1, reflected that the rock-like substance recovered from the suspect vehicle was cocaine and that its gross weight was 125.34 grams. The state and the defense also stipulated to the testimony of Ken Harvey, custodian of evidence for the Plaquemines Parish Sheriff’s Office, that two envelopes, the State’s Exhibits 2 and 3, were received by him and that the contents of Exhibit 2 were submitted to the chemist for analysis pursuant to the report identified as State's Exhibit 1.
 

 [6]
 

 .The minute entry of October 8, 2008 erroneously states that defendant pleaded guilty to the charge.
 

 [7]
 

 . Defendant was charged with and convicted of possession with the intent to distribute
 
 *1176
 
 cocaine.
 

 [8]
 

 . In
 
 Jones,
 
 the officers seized sixty-four tin foil packets of heroin; in
 
 Ash,
 
 the officers seized twenty-one pieces of crack cocaine and a bag of powdered cocaine; and in
 
 Bentley,
 
 the officers seized thirty-four pieces of crack cocaine.
 

 [9]
 

 . A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
 

 B. The requirement of an objection shall not apply to the court's ruling on any written motion.
 

 C. The necessity for and specificity of evi-dentiary objections are governed by the Louisiana Code of Evidence.
 

 La.C.Cr.P. article 841.
 

 [10]
 

 . La.C.Cr.P. art. 881.1 provides as follows:
 

 A.(1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
 

 (2) In misdemeanor cases, the defendant may file a motion to reconsider sentence at any time following commencement or execution of such sentence. The court may grant the motion and amend the sentence, even following completion of execution of the sentence, to impose a lesser sentence which could lawfully have been imposed.
 

 (3) In the event a defendant alleges mutual mistake in that the sentence imposed upon conviction pursuant to Code of Criminal Procedure Article 893 was in error and the prosecuting authority, the court, and the defendant intended that the imposition of sentence was to be deferred pursuant to Code of Criminal Procedure Article 893(E), such defendant may file a motion to reconsider the sentence for the sole puipose of considering that issue. Such motion shall be filed within two years of the date of successful completion of the probation imposed by the court. If the court finds that a mutual mistake exists and that the defendant was in all other respects eligible for the benefits of Code of Criminal Procedure Article 893(E), the defendant shall be enti-tied to the benefits thereof, in accordance with law.
 

 B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
 

 C. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
 

 D. The trial court may deny a motion to reconsider sentence without a hearing, but may not grant a motion to reconsider without a contradictory hearing. If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion.
 

 E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
 

 [11]
 

 . Additionally, the record reflects that the trial court was prepared to impose the maximum life sentence pursuant to La. R.S. 15:529.1., but reduced the sentence after a consultation with defense counsel.