Judge Joy Cossich Lobrano
The defendant, Anthony Young ("Defendant"), appeals from jury verdicts that convicted him of possession of hydrocodone, tramadol, and oxycodone.[1] After reviewing the record and applicable law, we affirm his convictions and sentence.
On August 15, 2014, the State charged Defendant and co-defendant Floyd Boudreaux[2] in an eleven count bill of information.[3] The State charged Defendant with aggravated assault on a peace officer with a motor vehicle (count 5), a violation of La. R.S. 14:37.6(A) and aggravated flight and failure to stop a motor vehicle that endangered human life (count 6), a violation of La. R.S. 14:108.1(C).[4]
Counts 8, 9 and 10 charged Defendant and Boudreaux with possession of hydrocodone and oxycodone in violation of *898 La. R.S. 40:967 and tramadol without a prescription in violation of La. R.S. 40:1238.1 (now La. R.S. 40:1060.13 ).
Count 11 charged Defendant with being a felon in possession of a firearm in violation of La. R.S. 14:95.1.
A jury trial commenced on June 28, 2016, and concluded on June 30, 2016, with the jury finding Defendant guilty on courts 5, 6, 8, 9 and 10.[5] Defendant's post-trial motions for new trial and post-verdict judgment of acquittal were denied.
On July 15, 2016, Defendant was sentenced to five years on counts 5, 8, 9 and 10 and to two years on count 6, with the sentences to run concurrently. The State filed a multiple bill of information charging Defendant as a recidivist as to count 5 and, on September 30, 2016, the trial court adjudicated him a third felony offender,[6] vacated his previous sentences, and resentenced him to eight years.
ERRORS PATENT
Our review for errors patent on the face of the record reveals one. In sentencing Defendant as a third offender, the district court failed to stipulate that the sentence be served without the benefit of probation or suspension of sentence in accordance with La. R.S. 15:529.1(G). However, La. R.S. 15:301.1(A) provides, in pertinent part: "[t]he failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement" that those restrictions apply. Our jurisprudence recognizes that "this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute." State v. Williams , 00-1725, p. 10 (La. 11/28/01), 800 So.2d 790, 799 ; State v. Dowell , 16-0371, pp. 4-5 (La.App. 4 Cir. 8/10/16), 198 So.3d 243, 246.
STATEMENT OF FACTS
On June 16, 2014, New Orleans Police Department ("NOPD") Detective Chad Cockerham, while in plain clothes and on foot, was conducting undercover surveillance of narcotics and weapons activity near the Desire Housing Development when he observed Defendant seated in the driver's seat of a black SUV in the area of Maurice Duncan and Treasure Streets. Det. Cockerham recognized Defendant from past encounters and noted that there was an active warrant for Defendant's arrest. The detective's attention was drawn to Defendant by the presence of an assault rifle sitting on the dashboard of the vehicle.
Det. Cockerham notified other officers to make an investigatory stop of Defendant's vehicle. NOPD Officers Willard Pearson and Brandon Kelly arrived in a marked unit and Det. Cockerham rode in the back seat. They observed Defendant's vehicle approach the intersection of Benefit and Louisa Streets at a high rate of speed and disregard the stop sign. Ofc. Pearson activated the unit's siren and lights in pursuit. Defendant disregarded the officers' attempt to stop his vehicle and led the officers on an erratic twenty-minute high-speed chase from the east bank of the river, across the Crescent City Connection *899 and onto the Westbank Expressway, where Defendant's vehicle stalled after colliding with two civilian vehicles. During the chase, Defendant drove against traffic at dangerously high speeds, narrowly averting a head-on collision with another police unit.
As Defendant's vehicle came to a stop, several officers approached Defendant and his passenger, Boudreaux, ordering them to exit the vehicle. Boudreaux complied with the officers' demands but Defendant refused. Ofc. Kelly tased Defendant to subdue and handcuff him. Officers searched Defendant's vehicle but did not recover a weapon.[7] They did, however, seize an unmarked pill bottle from the vehicle's front seat cup holder, which later proved to contain tramadol. Officers also seized oxycodone and hydrocodone, which were located in the vehicle's front console. Defendant was charged with possession of narcotics and cited for several traffic violations: reckless operation of a vehicle by disregarding multiple stop signs; failure to heed the officers' signal to stop; traveling in the wrong direction on a one-way street; hit and run; and operating the vehicle with a suspended driver's license.
Ofc. Pearson testified and corroborated Det. Cockerham's testimony. Ofc. Pearson added that he saw a rifle thrown from the front seat passenger window of Defendant's vehicle into a heavily weeded area during the first three minutes of the chase. The weapon was never recovered.
On the day in question, NOPD Officer Lawrence Weathersby was coming on duty when he heard the dispatch of pursuit of a black SUV. Ofc. Weathersby was traveling on the Interstate high rise bridge and saw Defendant's vehicle make a U-turn into oncoming traffic and into the path of his police unit. Ofc. Weathersby took evasive action and avoided a head-on collision with the vehicle. Ofc. Weathersby joined the pursuit and witnessed Defendant's vehicle run a red light, disregard stop signs, and collide with two civilian vehicles, which ultimately disabled Defendant's vehicle on the Westbank Expressway. When Defendant ignored police commands to show his hands and exit his vehicle, he was tased to ensure his removal from the vehicle.
The State and defense stipulated that if Dwayne Gilyot were called to testify, he would be qualified as an expert in the testing and analysis of controlled substances. They agreed that Gilyot would verify that the ten pills confiscated from Defendant's vehicle testified positive for tramadol, oxycodone and hydrocodone.
NOPD Officer Joseph Pollard, an expert in fingerprint analysis, testified he fingerprinted Defendant on June 28, 2016. He identified the card bearing those prints. Ofc. Pollard reviewed a "cert pack" from Defendant's earlier conviction for possession of cocaine, compared the fingerprints, and concluded that both sets belonged to Defendant.
The defense called co-defendant Boudreaux, who asserted his Fifth Amendment privilege to all of the defense counsel's questions.
ASSIGNMENT OF ERROR NUMBER 1
In the first of two assignments of error, Defendant argues the evidence is insufficient in that no rational juror could have found that the State proved beyond a reasonable doubt that he exercised dominion or control over any of the drugs found in the vehicle as it was rented at all times. Moreover, Defendant argues that it was impossible for him to know what the *900 sealed pill bottle found in the vehicle's cup holder contained.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
"In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt." State v. Sosa, 05-0213, p. 6 (La. 1/19/06), 921 So.2d 94, 99. "Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, 'assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence.' " Id. (quoting La. Rev. Stat. 15:438.)
"[W]hen a jury rationally rejects the hypothesis of innocence advanced by the defendant, that hypothesis fails, and 'the defendant is guilty unless there is another hypothesis which raises a reasonable doubt,' i.e., an 'alternative hypothesis ... sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.' " Id. , 05-0213, p. 7, 921 So.2d at 99 (quoting State v. Captville, 448 So.2d 676, 680 (La. 1984) )." The trier-of-fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness." Sosa, 05-0213, p. 11, 921 So.2d at 101.
To support a conviction for possession of a controlled dangerous substance in violation of La. R.S. 40:967, the State must prove that a defendant knowingly and intentionally possessed the drug. State v. Perron, 01-0214, p. 6 (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 928. Guilty knowledge is an essential element of the crime of possession of illegal drugs. State v. Major , 03-3522, p. 8 (La. 12/1/04), 888 So.2d 798, 803. However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances. State v. Trahan, 425 So.2d 1222, 1227 (La. 1983).
"The State need not prove that [a] defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction." Perron, 01-0214, p. 6, 806 So.2d at 928. "A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion and control," (citing State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4th Cir. 1990) ). A determination of whether a defendant had constructive possession depends on the circumstances of each case. Id. , (citing State v. Cann, 319 So.2d 396, 397 (La. 1975) ). In determining whether a defendant exercised the requisite dominion and control, factors which may be considered are knowledge that illegal drugs are in the area, relationship with one found to be in actual possession, access to the area where drugs were found, physical proximity to the drugs, and evidence that the area was frequented by drug users. Id. (citing State v. Reaux, 539 So.2d 105, 108 (La.App. 4th Cir.1989) ).
In Major , 03-3522, p. 8, 888 So.2d at 802-03, the Supreme Court stated:
The evidence at trial established that defendant had exercised dominion and control over the cocaine hidden underneath the dashboard of the car by virtue *901 of his dominion and control over the vehicle as the driver and professed renter. Ortega v. United States, 270 F.3d 540, 545 (8th Cir.2001) ; see also State v. Walker, 03-188, p. 7 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65-66, writ denied, 03-2343 (La. 2/6/04), 865 So.2d 738 (holding that the driver and sole passenger had custody of the car and the cocaine found in the car was within his immediate control even though ownership of the vehicle was not proven). As driver and ostensible renter of the vehicle, the defendant had complete and authorized access to the glove box and dashboard area where the drugs were found. Furthermore, the location of the drugs was within the reach of and accessible to the defendant as the driver. These facts alone are sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant exercised ample control and dominion over the cocaine to constitute the required element of constructive possession.
In State v. Duncan , 08-1579, p. 10 (La.App. 4 Cir. 6/17/09), 15 So.3d 1171, 1177, we stated:
[W]e find that defendant exercised the requisite dominion and control sufficient to establish constructive possession of the narcotics in this case; Agent Baroni's canine gave a positive signal for the odor of narcotics in the area between the front and rear seats of the suspect vehicle; the search revealed cocaine hidden under several blankets, pillows and a jacket on the rear seat behind where defendant was seated[.]
See also , State v. Morgan, 557 So.2d 977, 980 (La.App. 4th Cir. 1990) (defendant was in constructive possession of gun and narcotics found under the driver's seat where he was the permissive user of the vehicle from owner with whom he had a personal relationship); State v. Manson, 01-0159, p. 17 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761-62 (defendant had at least constructive possession of cocaine where he was the driver of the vehicle, despite testimony the car belonged to another person); State v. Williams, 01-0644, p. 8 (La.App. 5 Cir. 11/27/01), 802 So.2d 909, 914 (defendant in constructive possession of cocaine that was in plain view within the car he was driving, although the car may have belonged to another person); State v. Ashlock, 526 So.2d 511, 512-13 (La. App. 3 Cir. 1988) (defendant's use of an automobile was sufficient to show he had constructive possession of marijuana found in the automobile, even though it was never established who the registered owner was); State v. Walker, 03-0188, p. 7 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65-66 (driver had custody of the car and the cocaine found in the car was within his immediate control even though ownership of the vehicle was not proven; location of the drugs was within the reach of, and accessible to, defendant as the driver.)
Guilty knowledge, an essential element of possession of illegal drugs, is present here. Defendant refused to stop his vehicle when signaled to do so by police. In addition, he led officers on a long and dangerous high-speed chase, almost causing a head-on collision with the police unit driven by Ofc. Weathersby.[8] The jury could have reasonably relied upon Defendant's erratic behavior during the stop to find he had the requisite guilty knowledge of the drugs located in the car.
Defendant relies on *902 State v. LeBlanc, 01-1503 (La.App. 3 Cir. 6/5/02), 819 So.2d 424, in support of his position that he could not have been found to exercise dominion and control over the drugs found in his car. This reliance, however, is misplaced. The LeBlanc court concluded that a rational fact finder could not have concluded beyond a reasonable doubt that the defendant driver knowingly possessed the marijuana found in a knapsack on the front passenger seat of his car. Id., 01-1503, p. 8, 819 So.2d at 429. The court noted that, although the defendant was the owner of the vehicle and the drugs were easily accessible from his location as driver, the evidence was insufficient to prove he exercised dominion and control over the knapsack and its contents. Id. In addition, a passenger in the vehicle claimed, both at the scene and at trial, to be the owner of the knapsack as well as the drugs contained therein. None of these hypotheses of innocence are present in the case sub judice .
Viewing the evidence in the light most favorable to the prosecution, a rational juror could have concluded that Defendant constructively possessed the narcotics recovered from the vehicle. This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER 2
Defendant argues that the non-unanimous verdicts as to his felony convictions for aggravated assault and the possession of oxycodone, hydrocodone and tramadol are unconstitutional.
The Supreme Court has addressed this issue. In State v. Bertrand , 08-2215, p. 6 (La. 3/17/09), 6 So.3d 738, 742, the Court noted, "defendants argue that the use of non-unanimous verdicts [has] an insidious racial component, allow[s] minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed." The Bertrand Court found that a non-unanimous twelve-person jury verdict was constitutional and that La. C.Cr.P. art. 782[9] did not violate the Fifth, Sixth, and Fourteenth Amendments. Id. , 08-2215, p. 8, 6 So.3d at 743.
This assignment of error has no merit.
CONCLUSION
Based on the foregoing, Defendant's convictions and sentence are affirmed.
AFFIRMED.
Chase, J., concurs in the result.

Defendant was also convicted of aggravated flight and aggravated assault on a police officer, but these convictions are not addressed in his appeal.

This appeal pertains to Defendant Young only.

The first four counts of the bill, which pertained only to Defendant, were severed from the remaining counts and later nolle prossed .

Count 7 of the bill charged Boudreaux with being a felon in possession of a firearm.

The verdicts as to the possession of hydrocodone, tramadol and oxycodone convictions were by 10-2 jury votes. The aggravated flight verdict was returned by a unanimous jury, and the aggravated assault verdict was rendered by a jury vote of 11-1.

Defendant's two prior drug convictions were from the Twenty-Fourth Judicial District Court in Jefferson Parish Case Nos. 2008-1319 and 2007-1415.

Det. Cockerham posited that Defendant discarded the assault weapon during the chase. He dispatched units to retrace the flight path to locate the weapon with no success.

Flight is a circumstance from which guilt can be inferred. State v. Smith, 98-2645, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 314, 317-18 ; State v. Recasner, 98-2518, p. 3 (La.App. 4 Cir. 12/22/99), 750 So.2d 336, 338.

In 2018, La. C.Cr.P. art. 782 was amended to require an unanimous verdict in cases for an offense in which the punishment is necessarily confinement at hard labor. However, the provision specifically states the amendment is applicable to felonies committed on or after January 1, 2019. See Acts. 2018, No. 493, § 1, La. C.Cr.P. art. 782.